Please be seated. Thank you. Will the clerk please call the first case of the morning? 316-0372 Lawrence Dixon v. ADF Counsel, you may proceed. Please report, Counsel. My name is David Young. I represent the employee in this case, Lawrence Dixon. This case was a private money arbitrator and benefits were awarded. But this was reversed at the commission. And I believe that the proper standard of review was manifested for the evidence. But I argue today that that decision was unsupported by the evidence. Mr. Dixon, as part of his employment, had to purchase steel-toed boots and wear various safety equipment to work for the employer. When he started working for the employer May 13, 2013, he had to steal his own boots and had to do very strenuous manual labor that included loading trucks, climbing ladders, sweeping, walking up and down numerous stairs, and working other... Do you think the fact that he bought boots that were too small for him had anything to do with his developing of blisters on a foot that caused diabetes? Is it a cause of his problem? And I think both the independent medical examiner and the treating doctor in their depositions stated clearly that a cause of his blisters and that also caused the amputation of the gray toe was the boots that were too small. Let me ask you a point of question. Was any evidence presented suggesting that the steel-toed boots per se increased the risk of developing the blisters even on a diabetic? Well, Dr. Vaughn felt, the I.M.U. felt that they were too small and ill-fitted even though he never seen the boots or anything. But that's the question. Right. Is there any indication that the boots themselves enhanced or created the problem or was it the fact that the boots did not fit and were too small that was really the problem? Well, it's debatable because when he returned to work with the proper fitted shoe, according to the I.M.U.'s... He was okay. ...he still got blisters. So I would argue that while Dr. Vaughn felt the blisters were at least... Well, he got a blister on the second toe. I'm sorry? He got a blister on the second toe because he was missing the great toe when he got the proper shoes, wasn't he? Well, he did get the blister on the next toe, yes. Yes. So it was a blister on the second toe. Yeah, because he was missing the great toe. Right. Absolutely. But at that point, he had a size larger shoe. Yeah, a half size larger, from 12.5 to 13, absolutely. Right. And he still got the blister on the toe. Yeah, but didn't Drs. Vaughn and Burton testify that they had diabetic patients who wore steel-toed boots at work, and that it was appropriate for diabetics to wear those boots? Didn't they testify as to that? Absolutely, yes. So where does that... he gets the wrong size? Is that the employer's fault? No, it's not the employer's fault. But my argument isn't... focuses on the steel-toed boots. It's also that both of them testified while the steel-toed boots was a factor, his job duties were also a factor. This wasn't a single cause for his blisters and then to his amputation. Both Dr. Vaughn and Dr. Burton testified through his career medical circuit that the blisters were caused by, one, the steel-toed boots, and two, the heavy manual labor that he had to do. And when Arbitrator Dawson found this compensable, he noted that there were two causes, and it was in his summary sentence that it was the steel-toed boots and his work duties were part of the issue. Let me see if I can clarify something for you. I don't know if I can agree with your characterization of Dr. Vaughn's testimony. Didn't Dr. Vaughn opine that the claimant's right-toe injury and amputation was caused by the claimant wearing boots that were too small, and by his failure to seek prompt medical attention after the blister formed? He's contradicting. That's not unfair with the claimant, is it? Well, okay. First, he had wrong facts in regards to he thought that the petitioner followed up about a week or 10 days later than he actually did, and on cross that's corrected. So that part is one of his opinions. But he testified twice to a reasonable degree of medical certainty. The transcript was page 2711. The ill-fitted boots and repetitive trauma is what caused the wound. He said that twice, clearly in his deposition. But the ill-fitted boots, again, how does that tie back to the employer? Well, right. The ill-fitted boots was something that he did on his own, but that wasn't the only cause for his injury and amputation. It was a combination. It was a combination. Did anybody say, I mean, let's get specific. Did anybody say that it was the repetitive work alone, or was it the ill-fitting boots? Both. Okay. And I think that if it's both, I mean, I'm not here to argue that the cause was the ill-fitted boots because I don't think that's what the evidence shows. I think it's a combination or two causes. If he was putting his boots on in the parking lot, walking to a computer, sitting down, and then typing, he still would have ill-fitted boots. Unlikely he would have got these blisters that caused the amputation. I don't think you can separate the two. When he works in an industrial setting, heavy manual labor, and has significant blisters and infection, and he continues to do that heavy manual labor, and he then has the toe amputated, and both doctors testified that it was the ill-fitted boots and his work boots. So if he showed up with the right boots, his work duties wouldn't have had that effect, right? Well, I don't know because he did have the right-fitted boots two months later, and he started to develop blisters again. So I think that the only time this ill-fitted boot situation came in is when the IME felt that it was ill-fitted, and he later opined that he didn't even see the boot itself. He just theorized that it was ill-fitted. So I think to sum up is that I believe that while the ill-fitted boot was a factor, his work duties were also a factor as delineated by both doctors. Based on that, I believe that the commission should be reversed. Okay. Very good. Thank you, counsel. Counsel, you may respond. Good morning. My name is Ed Flynn. I'm here on behalf of ADM. May it please the Court. Counsel. This panel has immediately grasped the entire issue that I think is relevant in this matter, and the issue that I believe Petitioner's Counsel has ignored, and that is the petitioner in this case was a type 2 diabetic that was insulin dependent and bought ill-fitted boots, and before you a few moments ago, the Petitioner's Counsel represented that it was a theory that the boots were ill-fitted, and consequently, you know, that's one of the issues. It's not a theory. It's in the hospital records, and it's in the notes of the treaty position for the petitioner's expert. On page 2 of my brief, I pointed out, I supplemented the facts that had been ignored by the petitioner's brief, and that was that when I cross-examined the petitioner's expert, Dr. Pertain, I asked him, so you would agree with me that the pressure that Mr. Dixon sustained was actually due to the fact that Mr. Dixon, by his own admission and history from the hospital records, was sustained because he was wearing ill-fitted boots, correct? Yes. Or likely, yes, and that's in Volume 3C, 301 and lines 3 through 9 of the record. I went on to discuss with him in that cross-examination that whether he was walking his kids to school or walking his dog, wearing those ill-fitted boots, he was still going to develop that pressure wound. So regardless of what the argument is by the petitioner's counsel, it's the walking in those boots that caused the pressure wound. It's not the heavy labor that Mr. Dixon was engaged in. So you're saying walking in those ill-fitted boots, he was inevitably going to develop the same problems if he had never gone to work. That's my point. I agree wholeheartedly. It didn't matter what the job was that he was doing. It's the fact that he was walking in ill-fitted boots. He has an interesting combination theory here of repetitive trauma. For the heck of it, let's do a hypothetical here, that there are no ill-fitting shoes, but he's working and he develops blisters and argues repetitive trauma, which I think is what may be the alternative theory is. Would that be a compensable situation, hypothetically? I think that's a very interesting question. As a defense counsel, that proposes a completely different situation for me. Right. It's a hypothetical. I understand that. And I think that gets into the issue that I raised in my brief regarding accident, because that's what the matter was that's before you. You're asked to address accident causation, and I addressed the three categories that this panel is already well aware of regarding accident and the issue of personal risk or neutral risk or risk distinctly associated with the employment. I submit to you that walking is a neutral risk, and therefore a neutral risk is not a compensable incident that would cause an injury that's compensable. Everybody has to walk, whether it's – I mean, if you take your hypothetical, Your Honor, and I respect the hypothetical, but if you take your hypothetical to the next level and you say that the person had a – the employer had a parking lot that was three-quarters of a mile from the designated parking lot, three-quarters of a mile away, and they walked from that designated parking lot to their job site. They had a sedentary job, and then they had a lunch break, and they had two breaks throughout the day. So maybe throughout the day they walked another, let's say, 600 yards, and now they've walked back to the designated parking lot. So maybe they've walked two miles in those shoes. And they develop a pressure wound that ultimately led to an infection and the loss of their toe. There's nothing in that job that has been a compensable injury. That person has developed a pressure wound that has resulted in the loss of a big toe simply because of a neutral risk. Walking is what every one of us have engaged in in order to get into this courtroom. Yeah, but take this hypothetical. There's a missing link here. If I'm him, I'm going to respond, well, that's true, but what about somebody who repetitively has to go up and down stairs all day long eight hours a day? Does the average person do that? And in that case, would it not be compensable? Every fact, every case, and every fact situation must be examined. Take it to the next level. Must be examined on its own facts and merits. But repetitive has a meaning, doesn't it? That does change the facts. Yeah. In this situation, though, that's not the facts that we're dealt with. Because if this panel were to find this particular... Oh, wait a minute. Hold on. He hangs his hat on one line in Vaughan's testimony where he says the repetitive trauma to the wound also resulted in loss of the great toe. That's it. That's where he hangs his hat. Except if you look at the commission, they didn't buy Vaughan's testimony in that regard. They said, Dr. Vaughan testified that he did not know how the petitioner climbed stairs at work, how often he carried bags of grain, or how much he walked at work. All Dr. Vaughan knows is that the petitioner worked an eight-hour shift. So consequently, Dr. Vaughan evidently doesn't know or didn't know anything that would back up his opinion that there was a repetitive trauma that contributed to this injury. The commission just didn't buy it. So they reversed it. Of course, to me, that gets... Of course, we're dealing with hypothetical... We're back to the hypothetical. Yeah, we're back to our hypothetical. If we get back to the standard principle that was established in the State in 1918 that I cited in the Matheson case... Very fresh authority, you're citing. Well, but it's still good law, Your Honor. And that is that the employee cannot take affirmative actions that are going to cause their injury in order to make the case compensable. And so consequently, the affirmative action here is this employee bought ill-fitted boots. To find this case compensable would place upon the employer the burden of, first of all, fitting people for their boots, then checking their feet at the end of the work shift to determine if they've got wounds on their feet. You know, that's a personal... That is another aspect of this case, the personal action of treatment of an injury. That's correct. Which is in the control of... The employee. Right. And so consequently, I don't know if I've answered all of your hypotheticals, but considering the fact that the burden of proof is the manifest way of the evidence, we respectfully request that you sustain the commission in your trial. Thank you, counsel. Counsel, you may reply. Just to go into this case and say that... Use walking as an example. I don't think that this is the fact pattern here. I think that while I can see that the ill-fitted boots was a cause of his problems, so was the heavy demand of his job. And because of that, I believe there's a different situation than trying to state that this is a neutral risk due to walking. His work duties were a risk distinctly associated with his employment. Well, here's the question. Does the record delineate or establish what those duties were, how repetitive this was, how much he walked? You're talking about heavy duties, but you cited a passage, Justice Hoffman, that indicates they didn't really know what his repetitive activities were all day. Well, Dr. Vaughn did posit connect the boots, ill-fitted boots, and the work duties to the injury. But as he said, the commission didn't believe it. Right. But Dr. Bertain also, who was the treater, stated that. And he outlined what his understanding of the job duties were, and those mirrored the testimony of the petitioner at trial on what the job duties were. So I think that Dr. Bertain had the information, and he caused it connected to the two activities, the ill-fitted boots and the work duties. Thank you. Okay. Well, thank you, Counsel. Both of your arguments in this matter will be taken under advisement and written disposition shall issue.